**E. W. ROBERTS et al., Libelants,**

v.

**ST. MARKS TOWING COMPANY, Respondent.**

**Civ. A. No. 471.**

United States District Court,
N. D. Florida, Tallahassee Division.

March 9, 1955.

John T. Wigginton, Tallahassee, Fla., for libelants.

George W. Atkinson, Tallahassee, Fla., for defendant.

DE VANE, Chief Judge.

Prior to April 30, 1954 Southern Terminal & Transport Company entered into a contract with St. Marks Towing Company for the purchase of a quantity of Bunker "C" grade fuel oil to be delivered in its storage tanks located at the Tallahassee Power Plant on the St. Marks River above St. Marks, Florida. The St. Marks Towing Company purchased the oil under contract from the Pure Oil Company and agreed to accept delivery at Smith's Bluff, Texas or at other convenient points on the Gulf Coast.

Following the execution of the agreements for sale and purchase, referred to above, the St. Marks Towing Company, on April 30, 1954, entered into a contract with A. P. Ward & Sons, Inc., a corporation of the State of Florida, with its principal office and place of business in the City of Pensacola, for the transportation, by tug and barges, of said fuel oil and its delivery in the storage tanks of the Southern Terminal & Transport Company, located at the Tallahassee Power Plant referred to above.

Due to an urgent demand for the prompt delivery of a quantity of the oil, A. P. Ward & Sons, Inc. sublet a part of its contract to a Texas towing outfit, whose name was not disclosed to the court at the trial of this case, and on May 8, 1954 this Texas concern loaded two barges with said fuel oil, at the docks of the Pure Oil Company, at Smith's Bluff, Texas for delivery to the storage tanks of the Southern Terminal & Transport Company at the Tallahassee Power Plant. These barges were towed to St. Marks, Florida by the tug "Dawn" and arrived there on or about May 15, 1954. Those in charge of the tug "Dawn" were unfamiliar with the St. Marks River and in attempting to bring the barges up the river to the Power Plant, ran aground twice. At some time and in some manner, a hole was knocked in one of the barges and when steam was applied to the oil in the barge, for the purpose of unloading, a quantity of oil escaped from the barge into the waters of the St. Marks River and damaged approximately fifty-eight boats located along the river, downstream from the Tallahassee Power Plant. The owners of these boats filed this libel in personam against the St. Marks Towing Company for damages sustained by each.

The libel of information charges respondent with loading the two barges with oil; with transporting the same to the dock of the Tallahassee Power Plant on the St. Marks River and with negligently, carelessly and wantonly permitting said barges to remain in said river and in attempting to unload the oil from said barges, permitting quantities of oil to flow into the St. Marks River, which brought about the damages alleged to have been sustained by libelants. Respondent, by its answer and exceptions, having denied all responsibility and liability for the accident and injuries, when the case came on for trial the court first tried the issue of liability and now has before it, for disposition, a motion for a decree in respondent's favor, on the ground that the evidence in the case totally fails to show any negligence on its part and any liability to libelants.

Proctor for libelants did not offer any proof in support of the allegations of the libel of information that respondent loaded the barges with oil, transported same from Smith's Bluff, Texas to St. Marks, Florida and unloaded it from the barges. They base their claims of liability of respondent entirely on a radio-telephone conversation between Luther Franklin, an employee of the Citizens Oil Company, with a place of business located at St. Marks, and the skipper of the tug, "Dawn". Three witnesses called by libelants testified to overhearing the radio-telephone conversation between the skipper and Franklin, in which the skipper notified Franklin that he thought he had a leak in one of his barges and that Franklin directed him to bring the barges on in, despite the leak.

While there is no direct evidence in the case establishing Franklin as an officer or agent of the St. Marks Towing Company, the evidence does show that there is some corporate affiliation between the St. Marks Towing Company and the Citizens Oil Company and that the St. Marks Towing Company has an arrangement with the Citizens Oil Company by which Luther Franklin makes all necessary pipeline connections between barges and storage tanks for the discharge of any oil owned by the St. Marks Towing Company and delivered into the storage tanks of the Southern Terminal & Transport Company at the Tallahassee Power Plant. The hearsay evidence as to the alleged conversation between Franklin and the skipper of the tug, "Dawn" is in direct conflict in that Franklin vigorously denies any such direction to the skipper. This evidence becomes immaterial in this case, however, in that there is no evidence that oil leaked from the barge until steam was applied for the purpose of pumping the oil out of the barge. The obligation of transporting and unloading the barges rested upon A. P. Ward & Sons, Inc., under its contract with the St. Marks Tow-

ing Company and respondent had nothing whatever to do with spilling of the oil from the barge into the St. Marks River. The relationship A. P. Ward & Sons, Inc. bore to respondent was that of independent contractor and respondent cannot be held liable for any negligence committed by A. P. Ward & Sons, Inc., or its agent. Lamb v. Interstate S/S Co., 149 F.2d 914.

An appropriate decree dismissing this libel will be entered in conformity with this Memorandum Decision.